**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**PENNY CATHERINE
WILLIAMS,**

                  **Plaintiff,**              **1:12-cv-655
                                                             (GLS)**

              v.

**CAROLYN W. COLVIN,**

                  **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Legal Aid Society of Northeastern NY<br>112 Spring Street<br>Suite 109<br>Saratoga Springs, NY 12866 | MARY MARTHA WITHINGTON, ESQ. |
| **FOR THE DEFENDANT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | SIXTINA FERNANDEZ<br>Special Assistant U.S. Attorney |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Penny Catherine Williams challenges the Commissioner of Social Security's denial of Disibility Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Williams' arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On July 15, 2008, Williams filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since June 15, 2005. (Tr.[1] at 50-51, 86-95.) After her application was denied, (*id.* at 52-57), Williams requested a hearing before an Administrative Law Judge (ALJ), which was held on April 6, 2010, (*id.* at 32-49, 58). On April 28, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

Administration Appeals Council's denial of review. (*Id.* at 1-5, 20-31.)

Williams commenced the present action by filing her complaint on April 18, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

### III. <u>Contentions</u>

Williams contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 13-22.) Specifically, Williams argues that the ALJ committed error in failing to: (1) "give appropriate weight to [her] subjective complaints of back pain, knee pain, shoulder pain, headaches and abdominal pain from ulcerative colitis"; and (2) "seek clarification from [her] providers of her functional limitations and in failing to consider the effect of untreated depression and anxiety on [her] functioning."[2] (*Id.*) The Commissioner counters that the appropriate legal standards were used and the findings are supported by

---

[2] In reality, Williams raises several other arguments in her brief. (Dkt. No. 10 at 13-22.) The bulk of those confusing, bare-bones contentions warrant little discussion, but they are all dealt with below.

3

substantial evidence. (Dkt. No. 11 at 5-17.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 10 at 5-13; Dkt. No. 11 at 2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Credibility Determination

First, Williams argues that the ALJ's credibility determination is the result of legal error and is not supported by substantial evidence. (Dkt. No.

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

4

10 at 13-17, 21-22.) Williams specifically contends that the ALJ impermissibly failed to: (1) "identify that objective medical evidence which in fact would be supportive of a finding of disability," namely, a November 2009 MRI, and findings of Drs. Victoria Michaels and Annette Payne; (2) "identify sources of the objective medical evidence relied upon to reject [Williams'] testimony"; and (3) sufficiently specify the factors justifying his credibility determination.[4] (*Id.* at 13-15, 22.) None of these arguments are availing.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce

---

[4] Williams also asserts that the ALJ erred by failing to "consider [her] impairments in combination with each other" pursuant to 20 C.F.R. § 404.1523 when assessing her credibility. (Dkt. No. 10 at 15-17, 19, 22.) The Commissioner fails to address this argument directly. While the court readily acknowledges that the ALJ must consider "the combined effect of a claimant's impairments . . . in determining disability," *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995), there is no basis to argue that the ALJ failed to do so here. In fact, it is clear that the ALJ considered all of Williams' impairments and their combined effect on her, and he simply concluded that her allegations regarding pain were not entirely credible. (Tr. at 28.) For reasons explained elsewhere, *see infra* Part VI.A., that determination is supported by substantial evidence. The court also notes that it discerns no contention by Williams that the step two severity determination was incorrect despite the fact that the Commissioner responded as though such an argument had been made. (Dkt. No. 11 at 5-8.)

5

the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96–7p, 61 Fed.Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Williams' "medically determinable impairments could cause only some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of the

6

totality of [those] symptoms [we]re not credible to the extent they [we]re inconsistent with" a residual functional capacity (RFC) for the full range of light work. (Tr. at 27-28.) This finding is based on the appropriate legal standards and is supported by substantial evidence. First, on the issue of whether the ALJ committed legal error, he specifically cited 20 C.F.R. § 404.1529 and SSR 96-7p, the governing regulation and Social Security Ruling, and explained that "[t]he evidence in the entire record was considered, including [Williams'] own statements and allegations as well as those of the treating and examining physicians." (Tr. at 27, 29.) Given the clear application of the appropriate § 404.1529 factors, as detailed and specifically recited in the ALJ's determination, (*id.* at 28-30), no legal error was committed. *See Dombrowski v. Astrue*, No. 5:12-cv-638, 2013 WL 528456, at *4 (N.D.N.Y. Feb. 11, 2013).

The credibility determination is also supported by substantial evidence. Specifically on the issue of pain, the ALJ noted that none of the treating or examining sources observed Williams in distress, and some described her "as being rather vague when discussing symptoms." (Tr. at 28, 208-09, 432, 471-72.) Consultative examiner Kautilya Puri opined that Williams "did not have any objective limitations to . . . fine motor or gross

7

motor activities[, her] gait or to her activities of daily living[, and only] mild limitations to squatting." (*Id.* at 269.)

In further support of the ALJ's credibility determination, Williams visited her primary care physician, Zandra Rios-Rivera, on only four occasions directly related to complaints of pain. (*Id.* at 222, 223-24, 225-26, 227.) This evidence suggests, as articulated by the ALJ, only sporadic treatment was sought for pain by Williams. (*Id.* at 28.) While Dr. Michaels, Williams' treating rheumatologist, found "diffuse myalgias and arthralgias without evidence of an inflammatory process," she did "not know why [Williams] hurt[] so much." (*Id.* at 432.) All of this evidence, among other evidence in the record discussed by the ALJ, supports his credibility determination and evinces consideration of the appropriate § 404.1529(c)(3) factors.

Finally, regarding the evidence that Williams claims supports her allegations of pain, but was overlooked by the ALJ, (Dkt. No. 10 at 14-15), "whether there is substantial evidence supporting the [claimant]'s view is not the question"; instead, the court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, No. 12-4186-cv, 2013 WL 3214890, at *1 (2d Cir. June 27, 2013). As a factual

8

matter, there is no basis to argue that the ALJ did not consider all of the evidence that was before him. Indeed, he cited to Dr. Michaels' notes, and the report of Dr. Payne. (Tr. at 26, 28.) A report regarding the MRI of November 23, 2009 was not part of the record before the ALJ; notably, the apparent findings of that MRI are recited in the new evidence presented to the Appeals Council, as a note recorded by Dr. Rios-Rivera, and in another doctor's notes that were part of the record considered by the ALJ. (*Id.* at 5, 472, 535.)

B. **Failure to Develop the Record**

Next, Williams asserts that the ALJ committed reversible error by failing to seek clarification from her providers regarding her functional limitations. (Dkt. No. 10 at 18-19.) Chiefly, Williams contends that the ALJ erred by "rejecting the restriction of lifting and carrying to [five] pounds which [treating Dr. John] Whalen provided and the effect this has on eliminating work at the light exertional level." (*Id.* at 18.) In the absence of clarification from Dr. Whalen or Williams' other providers on her RFC, it was error, claims Williams, to find that she retains the RFC for light work.[5]

---

[5] Additionally, Williams argues that the opinion of treating pain management physician James Cole—that her "[d]egree of [d]isability" is

9

(*Id.*)  The Commissioner counters, and the court agrees, that further development of the record was unnecessary.  (Dkt. No. 11 at 12-13.)

While the ALJ has an affirmative obligation to develop the administrative record, his duty to do so is not without limit.  *See Guile v. Barnhart*, No. 5:07–cv–259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 404.1512(d) (stating that, generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files her application).  Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence.  *See* 20 C.F.R. § 404.1520b(a).  Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to

---

"total," (Tr. at 539)—"may have been persuasive" to the ALJ.  (Dkt. No. 10 at 18-19.)  This evidence, submitted for the first time to the Appeals Council, (Tr. at 5), does not necessarily relate to the relevant time period—at least there is nothing about Dr. Cole's notes to indicate that his opinion of disability is retrospective—and, more importantly, his opinion would not compel a finding of disability inasmuch as it is on an issue specifically reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1).  As such, Dr. Cole's notes are of no moment.  *See Collins v. Comm'r of Soc. Sec.*, No. 12 Civ. 2194(GWG), 2013 WL 4258536, at *12 (S.D.N.Y. Aug. 15, 2013).

seek additional information.  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Here, the ALJ specifically considered whether further clarification from Dr. Whalen was necessary in light of the fact that he gave Williams a note for work restricting her to lift no more than five pounds and from repetitive bending.  (Tr. at 29, 473.)  As explained by the ALJ, Dr. Whalen's medical records indicate that he was of the opinion that Williams was not disabled, could perform light or sedentary work, and gave Williams the note only after she requested it.  (*Id.* at 29, 473.)  Supporting the ALJ's view that Dr. Whalen was not restricting Williams by giving her the note based upon his own examination, but was, instead, appeasing his patient, is the general lack of evidence to support the restriction, and the remainder of Dr. Whalen's examination report.  (*Id.* at 29.)  In his report, Dr. Whalen noted that Williams was "in no apparent distress," could move around the room and examination table, had a normal gait, and improved on certain testing with encouragement.  (*Id.* at 472.)  Further, Dr. Whalen did not feel that surgery would "be predictable in terms of relief of her symptoms," and that "[s]he has significant nonorganic signs present," which suggests that Williams' symptomology was, in part, psychological.  (*Id.* at 472-73.)  For

11

the reasons explained by the ALJ, the record was sufficient for him to render a disability determination without further development.

## C. Step Five Determination

Lastly, Williams suggest that the ALJ wrongly failed "to seek vocational testimony concerning the effect of having no high school diploma, GED or formal job training on [her] abilities to perform duties associated with sedentary positions, especially where there is evidence of some cognitive limitations." (Dkt. No. 10 at 19.) The court disagrees.

In making a step-five ruling, an ALJ may rely on the Medical Vocational Guidelines, or "grids," *see* 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by [her] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir.1983)). In that case, the

ALJ should consult with a vocational expert (VE) before making a determination as to disability. *See id.*

Because "[t]he grids [specifically] 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience,'" *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)), that portion of Williams' argument that faults the ALJ for failing to seek the testimony of a VE "concerning the effect of having no high school diploma, GED or formal job training on [her] abilities to perform duties associated with sedentary positions," (Dkt. No. 10 at 19), is without merit. Turning to the question of whether the testimony of a VE was necessary due to Williams' nonexertional impairments, it is first noted that Williams does not argue that her depression and anxiety, (Tr. at 265), significantly limit the range of work permitted by her exertional limitations. Assuming that she is making such an argument, the ALJ's findings that Williams' "symptoms relating to mental impairments have not been of such a level to cause interference in functioning or for [her] to pursue treatment in the form of counseling or psychotropic medications," (*id.* at 25), are supported by substantial evidence and demonstrate that the testimony of a VE was

13

not required here.

## D. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Williams' complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 24, 2013
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court